Stephanie R. Tatar – State Bar No. 237792
**TATAR LAW FIRM, APC**
3500 West Olive Avenue, Suite 300
Burbank, California 91505
Telephone: (323) 744-1146
Facsimile: (888) 788-5695
Stephanie@thetatarlawfirm.com

*Attorney for Plaintiff Kimberly Chandler*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KIMBERLY CHANDLER**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**EQUIFAX INFORMATION SERVICES LLC**<br>    and<br>**EXPERIAN INFORMATION SOLUTIONS, INC.**<br>    and<br>**BANK OF AMERICA CORPORATION**<br><br>    **Defendants.** | **CIVIL ACTION NO. 8:14-CV-926**<br><br>**COMPLAINT FOR VIOLATIONS OF FAIR CREDIT REPORTING ACT**<br><br>**DEMAND FOR JURY TRIAL** |

## PRELIMINARY STATEMENT

1.    This is an action for damages brought by an individual consumer, Kimberly Chandler, against Equifax Information Services LLC, Experian Information Solutions, Inc. and Bank of America Corporation.

2.    Defendants Equifax Information Services LLC ("Equifax") and Experian Information Solutions, Inc. ("Experian") are national consumer reporting

1
COMPLAINT AND JURY DEMAND

agencies ("CRA") that have been selling credit reports inaccurately marking Plaintiff as deceased. When they inaccurately report a living consumer as deceased, Equifax and Experian make it practically impossible for that consumer to access credit, as it did with Mrs. Chandler. Equifax's and Experian's practices also harm the businesses that purchase their reports; as such companies cannot process credit applications due to the applicant's lack of a credit score. There is no good faith rationale to explain Equifax's and Experian's practices other than the generation of revenue. If Equifax and Experian actually believed that Mrs. Chandler was deceased, they had no legally permissible basis to sell her reports. If Equifax and Experian believed Mrs. Chandler was alive, they knowingly sold her reports with a gross inaccuracy. Moreover, Equifax and Experian know that identity thieves use the credit information of truly deceased persons to commit credit fraud. The source of this information is a Bank of America Corporation ("Bank of America") account reporting on Plaintiff's Equifax and Experian credit reports. Bank of America similarly has no procedure in place to assure that it accurately reports a deceased notation to the consumer reporting agencies. Defendants thus violated Plaintiff's rights under the Fair Credit Reporting Act ("FCRA") as set forth below.

## **JURISDICTION AND VENUE**

3. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331, and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

4. Venue lies in this district pursuant to 28 U.S.C. § 1391(b).

## **PARTIES**

5. Plaintiff Kimberly Chandler is an adult individual residing in Charlotte, NC.

6. Defendant Equifax is a consumer reporting agency that regularly conducts business in the Central District of California, and which has its headquarters and a principal place of business located at 1550 Peachtree Street Northeast, Atlanta, GA.

7. Defendant Experian is a consumer reporting agency that regularly conducts business in the Central District of California, and which has its headquarters and a principal place of business located at 475 Anton Boulevard, Costa Mesa, CA.

8. Defendant Bank of America Corporation is a business entity that regularly conducts business in the Central District of California, and which has a principal place of business located at 100 N. Tryon St #170, Charlotte, NC 28202.

## FACTUAL ALLEGATIONS

*Equifax and Experian's Practices Concerning the Sale of Reports on the "Deceased"*

9. Equifax and Experian are regulated as a "consumer reporting agencies" ("CRA") under the FCRA 15 U.S.C § 1681a(e).

10. Equifax and Experian sell millions of consumer reports (often called "credit reports" or "reports") per day, and also sells credit scores. 15 U.S.C. § 1681a(e).

11. Pursuant to the FCRA, Equifax and Experian must follow procedures which assure that the reports they sell meet the standard of "maximum possible accuracy." 15 U.S.C. § 1681e(b).

12. Pursuant to the FCRA, Equifax and Experian must maintain reasonable procedures to assure that reports are sold only for legitimate "permissible purposes." 15 U.S.C. §§ 1681e(a) & 1681b.

13. Equifax and Experian place a "deceased" notation or marking on reports when they are advised from any of their many data furnishing sources that a given consumer is deceased.

14. The furnishing sources identify "deceased" consumers by marking the "status" of such consumer's responsibility for any subject account with an "X" code in the ECOA field of an electronic data input format used in the credit reporting industry, known as Metro or Metro 2.

15. Equifax and Experian do not request or require a death certificate from any of their data sources which advise that a consumer is "deceased" before placing a "deceased" mark on that consumer's report.

16. Equifax and Experian do not request or require any proof from any data source which advises that a consumer is "deceased" showing that the consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

17. Equifax and Experian do not independently verify with any source that a consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

18. A deceased notation is a very unusual marking upon a credit file or credit report.

19. In some cases, in order to assure accuracy, Equifax and Experian send letters and/or other communications to consumers when certain information that may be considered suspicious or unreliable is furnished about said consumers to be placed in their Equifax and Experian credit files, such as in cases where consumers have a freeze or fraud alert on their credit report, or in accordance with certain state laws, such as the consumer laws of Colorado. But Equifax and Experian have no similar procedure to notify the consumers (such as a next of kin

1  or executor or administrator of the consumer's estate) when an "X" deceased code
2  is furnished to Equifax to be placed in said consumer's credit files or reports.

3    20.  Equifax and Experian regularly receive the "Death Master File" from the Social Security Administration listing by social security number those consumers that the government believes to be deceased. But Equifax and Experian do not cross-reference the "X" code received from furnishers with the Death Master File in order to determine whether any given consumer reported as deceased via a furnishing source is also on the Death Master File before selling a credit report about said consumer, or at any time.

   21.  Equifax and Experian will only use the Death Master File to sell additional products for an additional fee which are designed to show whether a given consumer is truly deceased.

   22.  Indeed, Equifax and Experian employ no procedures *at all* which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report and selling that report.

   23.  Even in instances where other data on the face of the consumer's report indicates that he/she is not deceased, Equifax and Experian employ no procedures which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report.

   24.  Even in instances where the purportedly deceased consumer communicates directly with Equifax and Experian, Defendants employ no procedures which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report.

   25.  Once a "deceased" mark is placed upon a consumer's report, Equifax and Experian will not calculate and will not provide a credit score for that consumer.

26. Nevertheless, Equifax and Experian routinely sell to third parties credit reports for persons with a "deceased" mark on their reports with no credit score, despite a request by the purchaser of the report for a credit score for that consumer.

27. Upon Equifax and Experian's reports with a "deceased" mark sold to third parties Equifax and Experian never calculate or provide a credit score for that consumer.

28. Equifax and Experian know that third party credit issuers use a credit score in order to process a given credit application.

29. Equifax and Experian know that many third party credit issuers require a credit score in order to process a given credit application.

30. Equifax and Experian know that consumers without credit scores are unable to secure any credit from most credit issuers.

31. Equifax and Experian know that living consumers are turned down for credit specifically because Equifax and Experian are reporting them as "deceased" and without a credit score.

32. Equifax and Experian have been put on notice for years through consumer disputes and lawsuits that living consumers are turned down for credit specifically because Equifax and Experian are reporting them as "deceased" and without a credit score.

33. Equifax and Experian have received and documented thousands of disputes from consumers complaining that their Equifax and Experian credit report had them erroneously marked as "deceased."

34. Equifax and Experian know that thousands of consumers are erroneously marked as "deceased" on their Equifax and Experian credit reports via an erroneous furnishing of the "X" code, but said consumers are not on the Death Master File and are, in fact, alive.

35. Nevertheless, Equifax and Experian employ no procedures which assure that a consumer marked as "deceased" on one of Equifax and Experian's reports are, in fact, deceased.

36. Even consumers who dispute the erroneous "deceased" status on their Equifax and Experian credit reports continue to be erroneously marked as deceased unless the furnishing source which provided the erroneous "X" code in the first instance decides to change the code.

37. Equifax and Experian have no independent procedure to change an erroneous deceased status on their own and will merely parrot their furnishing source in the case of a reinvestigation into the accuracy of the deceased status upon a consumer's report, which reinvestigation was triggered by a consumer dispute.

38. Nor do Equifax and Experian employ any procedures to limit or stop the furnishing of reports to third parties for consumers which they have marked as "deceased" under any circumstances.

39. For years after a consumer's actual death, Equifax and Experian will continue to sell credit reports about that consumer.

40. Equifax and Experian will only remove a deceased consumer's file from their credit reporting database when it is no longer valuable to Equifax and Experian – meaning that nobody is continuing to buy that report from Equifax and Experian.

41. Equifax and Experian charge third parties a fee for reports with a mark that a consumer is deceased ("reports on the deceased") as it would for any other report.

42. Equifax and Experian profit from the sale of reports on the deceased.

43. Equifax and Experian have in their credit reporting database hundreds of thousands of "deceased" tradelines corresponding to distinct credit files for individual consumers that they have marked as "deceased."

44. Equifax and Experian know that truly deceased consumers do not apply for credit.

45. Equifax and Experian know that the credit information and reports of truly deceased persons are used by criminals to commit identity theft or credit fraud. Indeed, identity theft using the personal identifying information of deceased consumers is known to Equifax and Experian to be a common and major source of identity theft.

46. Equifax and Experian know that identity theft and credit fraud are serious and widespread problems in our society.

47. Equifax and Experian warn the relatives of truly deceased consumers that identity theft can be committed using the credit reports and information of the deceased, and requires relatives to provide a death certificate or executorship papers, among other proofs, before accessing the deceased consumer's credit information or report.

48. Equifax and Experian have no similar death certificate, executorship paper, or any other proof requirements for their data sources which report a consumer as deceased or for the buyers of their reports which access the purportedly deceased consumer's information.

49. Indeed, Equifax and Experian sell reports on the deceased to third parties in an automated fashion and without any specific or general certification that could reasonably explain a "permissible purpose" for purchasing or using a (supposedly) deceased consumer's credit history and/or report.

50. For consumers who are deceased, there exists no permissible purpose under the FCRA for Equifax and Experian to ever sell their credit reports, absent a court order.

51. Equifax and Experian know that such reports contain a vast amount of personal identifying and credit account information on the supposedly deceased

consumer, information that can be used to commit identity theft or for other fraudulent purposes.

### *Case Specific Facts*

52. Plaintiff has been marked as "deceased" on her Equifax and Experian credit reports since at least September 2012.

53. Plaintiff is not deceased.

54. Equifax and Experian did not calculate or provide any credit score for or on Plaintiff, even though they sold reports about her to third parties marking her as "deceased."

55. Prior to sale of its consumer report about Plaintiff, Equifax and Experian did nothing to investigate the information received regarding the deceased notation.

56. Plaintiff has disputed the inaccurate information with Equifax to their representatives by following Equifax's established procedures for disputing consumer credit information.

57. Plaintiff has disputed the inaccurate information with Equifax from September 2012 through the present.

58. Notwithstanding Plaintiff's efforts, Equifax has sent Plaintiff correspondence indicating its intent to continue publishing the inaccurate information and Equifax continues to publish and disseminate such inaccurate information to other third parties, persons, entities and credit grantors. Equifax has repeatedly published and disseminated consumer reports to such third parties from at least September 2012 through present.

59. Despite Plaintiff's efforts, Equifax has never: (1) contacted Plaintiff to follow up on, verify and/or elicit more specific information about Plaintiff's disputes; (2) contacted all third parties that would have relevant information concerning Plaintiff's disputes to the entities originally furnishing the inaccurate

1 information; and (4) requested or obtained any credit applications, or other relevant
2 documents from the entities furnishing the inaccurate information.

3       60.    Notwithstanding Plaintiff's disputes, Bank of America, furnisher of
4 the inaccurate information, has also failed to conduct timely and reasonable
5 investigation of Plaintiff's disputes after being contacted by the relevant credit
6 reporting agencies concerning Plaintiff's disputes, and has continued to report such
7 inaccurate information to various credit reporting agencies, including failing to
8 mark the above account as disputed.

9       61.    Despite Plaintiff's exhaustive efforts to date, Equifax and Bank of
10 America have nonetheless deliberately, willfully, intentionally, recklessly and
11 negligently repeatedly failed to perform reasonable investigations/ reinvestigations
12 of the above disputes as required by the FCRA, have failed to remove the
13 inaccurate information and have continued to report the derogatory inaccurate
14 information about the Plaintiff.

15       62.    Defendants continue to publish and disseminate such inaccurate
16 information to other third parties, persons, entities and credit grantors.  Defendants
17 have repeatedly published and disseminated consumer reports to such third parties
18 from at least July 2013 through the present.

19       63.    As a result, Defendants made it practically impossible for Plaintiff to
20 obtain credit.

21       64.    As a result of Defendants' conduct, Plaintiff has suffered actual
22 damages in the form of credit denial or loss of credit opportunity, credit defamation
23 and emotional distress, including anxiety, frustration, embarrassment and,
24 humiliation.

25       65.    At all times pertinent hereto, Defendants were acting by and through
26 their agents, servants and/or employees who were acting within the course and
27

scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

66. At all times pertinent hereto, the conduct of Defendants, as well as that of their agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal law and the rights of the Plaintiff herein.

## **COUNT I – VIOLATIONS OF THE FCRA**
## **(PLAINTIFF v. EQUIFAX AND EXPERIAN)**

67. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

68. At all times pertinent hereto, Equifax and Experian were each a "person" and a "consumer reporting agency" as those terms are defined by 15 U.S.C. § 1681a(b) and (f).

69. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

70. At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

71. Pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o, Equifax is liable to the Plaintiff for willfully and negligently failing to comply with the requirements imposed on a consumer reporting agency of information pursuant to 15 U.S.C. § §1681e(b) and 1681i.

72. Pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o, Experian is liable to the Plaintiff for willfully and negligently failing to comply with the requirements imposed on a consumer reporting agency of information pursuant to 15 U.S.C. § §1681e(b).

73. The conduct of Equifax and Experian was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual

11
COMPLAINT AND JURY DEMAND

damages and harm to the Plaintiff that are outlined more fully above and, as a result, Equifax and Experian are liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief, as may be permitted by law.

## COUNT II – VIOLATIONS OF THE FCRA
## (PLAINTIFF v. BANK OF AMERICA)

74. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

75. At all times pertinent hereto Bank of America was a "person" as that term defined by 15 U.S.C § 1681a(b).

76. At all times pertinent hereto Bank of America was a "furnisher" as that term is used in 15 U.S.C § 1681s-2(b).

77. Bank of America violated sections 1681n and 1681o of the FCRA by willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C § 1681s-2(b).

78. Bank of America's conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to the Plaintiff that are outlined more fully above and, as a result, Bank of America is liable to compensate Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

## JURY TRIAL DEMAND

79. Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that relief be granted as follows:

(a) Actual damages;

(b) Statutory damages;

1           (c)    Punitive damages;

2           (d)    Costs and reasonable attorney's fees; pursuant to 15 U.S.C. §§ 1681n and 1681o; and

4           (e)    Such other and further relief as may be just and proper.

Respectfully Submitted,

**TATAR LAW FIRM, APC**

BY: _____

Stephanie Tatar

Attorney for Plaintiff

DATE: June 16, 2014

---

13

COMPLAINT AND JURY DEMAND